UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                     :

KATHERINE MARCANO,                         :

                      Plaintiff,          :

                                     :             23-CV-201 (JMF)

        -v-                      :

                                     :         <u>OPINION AND ORDER</u>

SCHINDLER ELEVATOR CORPORATION,     :

                    Defendant.      :

                                   :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

     In this case, Plaintiff Katherine Marcano seeks damages from Defendant Schindler

Elevator Corporation ("Schindler") for injuries she sustained when an elevator door allegedly

improperly closed on her at the Macy's Department Store in Herald Square, Manhattan, where

she worked. She alleges a traditional negligence claim and a *res ipsa loquitur* claim. *See* ECF

No. 1-1 ("Compl."), ¶¶ 13-17. Schindler now moves, pursuant to Rule 56 of the Federal Rules

of Civil Procedure, for summary judgment on both claims. *See* ECF No. 38. For the reasons that

follow, Schindler's motion for summary judgment is GRANTED with respect to Marcano's

negligence claim but DENIED with respect to her *res ipsa loquitur* claim.

## BACKGROUND

     Unless otherwise indicated, the following facts are undisputed.

### A. The Incident

     Marcano has worked as a sales associate at the Macy's in Herald Square since 2008. *See*

ECF No. 43 ("Def.'s Rule 56.1 Statement"), ¶ 15; *see also* ECF No. 40-4 ("Marcano Dep."), at

21. On August 22, 2021, after finishing her shift, Marcano called an elevator to go to her ninth-

floor locker to gather her belongings before heading home. Marcano Dep. 31. Marcano testified

that when the elevator — Elevator 35 — arrived, she and a co-worker, Shane Mallay, let two people exit, after which Mallay entered ahead of her.  Marcano Dep. 37-38.  As Marcano entered the elevator, the door of Elevator 35 closed and struck her left shoulder.  Def.'s Rule 56.1 Statement ¶ 3.  Marcano testified that the elevator door hit her shoulder "very strongly" and that the elevator door was coming "very fast."  *Id.* ¶¶ 4, 6.  The door reopened after striking Marcano's shoulder.  *Id.* ¶ 9.  Mallay did not see the accident occur, but he "heard a noise and turned around," after which Marcano told him that "the door suddenly and violently closed striking her."  *Id.* ¶¶ 21, 22.  After the accident, Marcano rode Elevator 35 up to her ninth-floor locker.  *Id.* ¶ 12.

Marcano testified that she reported the accident to Macy's human resources department three days after the accident — the first day she returned to work.  Marcano Dep. 46-47.  She alleges that, as a result of the accident, she sustained serious personal injuries, including a torn rotator cuff and a superior labrum anterior to posterior ("SLAP") tear in her left shoulder for which she underwent arthroscopic surgery on April 19, 2022, as well as cervical disc bulges and herniations.  *See* ECF No. 48 ("Pl.'s Rule 56.1 Response"), ¶ 71.

**B.  Schindler's Maintenance of the Elevator**

Schindler maintained the escalators and elevators at the Herald Square Macy's, and David Pennino — a Schindler elevator mechanic and foreman — was assigned to service the elevators.  Pl.'s Rule 56.1 Response ¶ 72; Def.'s Rule 56.1 Statement ¶ 37.  Pennino has no recollection of any complaints or problems with the door reopening device on Elevator 35 in all the fifteen years he worked at the Macy's; nor is he aware of any accidents occurring on Elevator 35 prior to Marcano's accident or any work order to repair or replace the door reopening device on Elevator 35.  Def.'s Rule 56.1 Statement ¶¶ 37-40.  Anthony Colasacco, an apprentice

mechanic with Schindler, began servicing the Macy's elevators in early 2021 and also has no recollection of any problems regarding Elevator 35 prior to Marcano's accident. *Id.* ¶¶ 41-44.

In the two years prior to the accident (and at least the five months following the accident), there were no service requests or complaints made by Macy's to Schindler for repair or service of the door speed, door force, or door reopening device on Elevator 35. *Id.* ¶¶ 45-46, 56. In the two years prior to the accident, Schindler performed routine preventative maintenance on Elevator 35 eleven times, including, most recently before the accident, on June 9, 2021. *Id.* ¶ 47. Such routine maintenance would include hatch-door maintenance, riding the car, cleaning, lubrication, checking door speed and pressure, and checking the door reopening device. *Id.* ¶¶ 48-49. Additionally, on June 29, 2021 — seven weeks before the accident — the New York City Department of Buildings performed a routine inspection of Elevator 35 and found no maintenance code violations or deficiencies. *Id.* ¶ 54. A routine inspection includes an inspection of the door system, door reopening device, and door force. *Id.* ¶ 55. Elevator 35 has been at the Macy's for the entirety of Marcano's period of employment; prior to the accident, she never had any Macy's elevator door strike her, nor had she witnessed or heard of any Macy's elevator door striking anyone else. *Id.* ¶¶ 16-18.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In

moving for summary judgment against a party who will bear the ultimate burden of proof at trial,

the movant's burden will be satisfied if he can point to an absence of evidence to support an

essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects

Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc.

v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

To defeat summary judgment, a non-moving party must advance more than a "scintilla of

evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as

to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its]

pleading [] or on conclusory statements, or on mere assertions that affidavits supporting the

motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation

omitted).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light

most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373

F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co.

of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## THE HALPERN EXPERT REPORT

As a preliminary matter, Marcano argues that the Court may not consider the expert

report of Jon Halpern, Schindler's liability expert, because it is unsworn and — unlike the expert

reports of Dennis Olson, Marcano's expert — was not ratified under penalty of perjury during

his deposition.  *See* ECF No. 46 ("Pl.'s Opp'n"), at 13.  The Court agrees.  "Courts have held

4

uniformly that unsworn expert reports or letters are inadmissible at summary judgment."
*Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09-CV-2365 (PGG), 2011 WL
671747, at *7 n.8 (S.D.N.Y. Feb. 18, 2011); *accord Reza v. Khatun*, No. 09-CV-233 (MKB),
2017 WL 3172816, at *2 (E.D.N.Y. July 25, 2017); *James v. Brown*, No. 14-CV-1767 (GHW),
2016 WL 3945688, at *2 n.4 (S.D.N.Y. July 19, 2016).  A court may consider an unsworn report
if it is offered by the opposing party in its moving papers, *see Glowczenski v. Taser Int'l Inc.*,
No. 04-CV-4052 (WDW), 2010 WL 1957289, at *3 (E.D.N.Y. May 13, 2010), or "if the
declarant affirms, under the penalty of perjury, that the contents of the unsworn statement are
true," *see Waddlington v. City of New York*, 971 F. Supp. 2d 286, 292 (E.D.N.Y. 2013).  But
neither of these circumstances is present here.

   Tellingly, Schindler's opposition to this argument is confined to a single footnote, which
argues summarily that the report is admissible because it was "not submitted for the first time in
support of [Schindler's] motion" and was instead "timely exchanged in discovery."  ECF No. 50
("Def.'s Reply"), at 2 n.1.  Schindler further argues that "the fact that plaintiff declined to depose
Halpern regrading [sic] the opinions express [sic] in his report should not be used against
[Schindler] here" and that, "[i]n any event, Fed. R. Civ. P. 56(c)(3) allows the court to consider
any 'materials in the record' on a summary judgment motion."  *Id.*  These arguments, however,
are meritless.  It is axiomatic that "a district court may only consider admissible evidence at the
summary judgment stage."  *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2021
WL 5507034, at *14 n.11 (S.D.N.Y. Nov. 24, 2021) (internal quotation marks omitted).  And
neither the fact that Halpern's report was produced during discovery, nor the fact that Marcano
elected not to depose Halpern, renders the report admissible.  *See, e.g.*, *Troupin v. Metro. Life
Ins. Co.*, 169 F.R.D. 546, 547 (S.D.N.Y. 1996) ("To be discoverable, the material need not be

admissible at trial.").  Accordingly, the Court will not consider the Halpern report in ruling on Schindler's motion.

## DISCUSSION

Turning to the merits of Schindler's motion for summary judgment, the Court can and does swiftly reject Schindler's first argument for summary judgment — that "no [] dangerous condition existed."  ECF No. 39 ("Def.'s Mem."), at 7-10.  Attempting to cast doubt on whether there was "any defect with the door closing force or door speed of Elevator 35," Schindler contends that there is "no evidence . . . that any defect existed with the door reopening device of Elevator 35 at the time of plaintiff's accident."  *Id.* at 9.  But Marcano unambiguously testified that the elevator door "hit [her] shoulder very strongly.  It was coming very fast and it hit [her] shoulder."  Marcano Dep. 40.  And she further testified that the door was closing "[a] lot faster than normal.  Too much faster than normal."  *Id.*  Schindler argues there is "no evidence to support" these assertions, Def.'s Mem. 9, but it is well established that "the assessment of a witness's credibility is a function reserved for the jury."  *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 n.4 (2d Cir. 2013) (per curiam); *see Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 206 (2d Cir. 2014) ("[A] district court may not discredit a witness's deposition testimony . . . because the assessment of a witness's credibility is a function reserved for the jury." (internal quotation marks omitted)).  Accordingly, Schindler's attacks on Marcano's credibility are for a jury, not this Court, to weigh.

With that, the Court will address Schindler's more specific arguments as to each claim.

## A.  Negligence

The Court begins with Marcano's traditional negligence claim.  A plaintiff bringing a claim of negligence under New York law, which applies here, must establish that (1) the

defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach caused the plaintiff's injuries; and (4) the plaintiff suffered damages. *See Green v. Schindler Elevator Corp.*, No. 19-CV-4677 (LLS), 2022 WL 4484542, at *3 (S.D.N.Y. Sept. 27, 2022) (citing *Ulerio v. Schindler Elevator Corp.*, No. 12-CV-1496 (DF), 2014 WL 1303710, at *3 (S.D.N.Y. Mar. 26, 2014). A company that has agreed to maintain an elevator in safe working condition, as Schindler did, "owes a duty of maintenance, and can be liable to a passenger for 'failure to correct conditions of which it ha[d] knowledge,' or 'failure to use reasonable care to discover and correct a condition which it ought to have found.'" *Ulerio*, 2014 WL 1303710, at *4 (quoting *Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553, 559 (1973)). Such a company may establish *prima facie* entitlement to summary judgment by presenting "competent evidence in admissible form showing that the elevator 'was functioning properly before and after the accident, and that, even if a defect existed, [the company] did not have actual or constructive notice of any such defect.'" *Id.* (quoting *Morton v. Otis Elevator Co.,* No. 07-CV-469 (JTC), 2011 WL 2199848, at *5 (W.D.N.Y. June 7, 2011); *see also Green*, 2022 WL 4484542, at *4. Upon the company's *prima facie* showing, "the plaintiff must come forward with evidence capable of showing that the defendant either: (1) created the defect; or (2) had actual or constructive notice of the defect.'" *Meade v. Otis Elevator Co.*, No. 15-CV-4822 (LTS) (HBP), 2017 WL 6509259, at *6 (S.D.N.Y. Dec. 18, 2017) (citation omitted).

Here, Schindler has made a *prima facie* showing that the elevator was functioning properly before and after the accident. It performed routine maintenance on Elevator 35, including checking door speed and pressure as well as the door reopening device, eleven times in the two years leading up to the accident, including on June 9, 2021. *See* Def.'s Rule 56.1 Statement ¶¶ 47-49. And on June 29, 2021, just seven weeks before the accident, the elevator

underwent a routine inspection by the New York City Department of Buildings, which included an inspection of the door system, door reopening device, door force, and which yielded no violations or deficiencies. *See id.* ¶¶ 54-55; *see also, e.g.*, *Skidd v. JW Marriott Hotels & Resorts*, No. 06-CV-1554 (DAB), 2010 WL 2834890, at *4 (S.D.N.Y. July 8, 2010) ("To constitute constructive notice, a dangerous condition must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it."). Moreover, neither Pennino nor Colasacco has any recollection of any accidents at all occurring on Elevator 35 prior to Marcano's accident, let alone accidents related to the elevator door's opening or closing. *See* Def.'s Rule 56.1 Statement ¶¶ 37-44.

To avoid summary judgment, therefore, Marcano has to point to evidence that Schindler "either: (1) created the defect; or (2) had actual or constructive notice of the defect.'" *Meade*, 2017 WL 6509259, at *6. Marcano contends that the mere fact that Colasacco — as "an apprentice who is not a licensed elevator mechanic" — performed work on the elevator unsupervised for eight hours on June 9, 2021, "in and of itself, raises a triable question of fact as to whether his work caused the elevator to malfunction and injure the plaintiff." *See* Pl.'s Opp'n 19. But that contention is unsupported. For one thing, the New York City Department of Buildings inspection took place *after* Colasacco's maintenance work. *See* Def.'s Rule 56.1 Statement ¶¶ 54-55; *see also* Def.'s Reply 3-4. For another, Marcano "may not rely on [such] mere speculation or conjecture as to the true nature of the facts to overcome the instant motion," *Meade*, 2017 WL 6509259, at *7 (internal quotation marks omitted). To survive summary judgment on her negligence claim, then, Marcano must proffer evidence from which a reasonable finder of fact could conclude that Schindler had either actual or constructive notice of the alleged defect.

Marcano does not even try to establish that Schindler had actual notice of the alleged defect; she argues only that there is a triable issue of fact with respect to whether Schindler had constructive notice of the alleged defect.  But on that front too, her arguments fall short.  She offers no evidence of a "specific defect, much less that a reasonable inspection would have revealed such a defect."  *Stone v. 886 3rd Next Generation Hotel, LLC*, No. 99-CV-4780 (LTS) (KNF), 2002 WL 1977956, at *5 (S.D.N.Y. Aug. 27, 2002).  Nor does Marcano argue, let alone show, that Schindler knew of any other problems with Elevator 35 that could have contributed to the alleged door malfunctioning.  *See Johnson v. Bon-Ton Dep't Stores, Inc.*, 278 Fed. App'x 56, 59 (2d Cir. 2008) (summary order).  Instead, she suggests, based on Olson's testimony, that Schindler's failure to "consistently monitor the door operation and adjust and maintain the position of the bands on the resistors as necessary to maintain a consistent opening and closing speed on the doors," namely that Schindler "checked the door closing force and speed . . . only on an annual basis and not during routine maintenance," raises "factual issues as to whether Schindler had constructive notice by reason of its failure to use reasonable care to discover and correct a condition which it ought to have found."  *See* Pl.'s Opp'n 17-18.  But that argument, without more, is "mere speculation that a defect existed, and that Defendant had actual or constructive notice of such a defect."  *Meade*, 2017 WL 6509259, at *7 (internal quotation marks omitted); *see also, e.g.*, *Linwood v. Schindler*, No. 16-CV-1020 (LAK) (RWL), 2019 WL 5722110, at *8 (S.D.N.Y. Jan. 25, 2019) ("Plaintiff's position that Defendants would have found something wrong with Elevator 22 by conducting more frequent inspections is 'mere speculation' and could not allow for a reasonable jury to infer constructive notice."), *report and recommendation adopted by* No. 16-CV-1020 (LAK) (RWL), ECF No. 97.

In short, Marcano fails to present "evidence capable of showing that [Schindler] either created the defect or had actual or constructive notice of the defect." *Id.* at *6 (cleaned up). Thus, Schindler's motion for summary judgment must be and is granted as to Marcano's traditional negligence claim. *See Swanson v. Schindler Elevator Corp.*, No. 21-CV-10306 (JMF), 2024 WL 967331, at *4-5 (S.D.N.Y. Mar. 6, 2024) (granting summary judgment to Schindler on a negligence claim for similar reasons).

**B.  *Res Ipsa Loquitur***

By contrast, the Court concludes that genuine disputes of material fact preclude entry of summary judgment with respect to Marcano's *res ipsa loquitur* claim.  The common-law doctrine of *res ipsa loquitur* "enables a plaintiff to prevail in a certain type of circumstance in proving negligence even though the plaintiff cannot show exactly who or what caused [his] injury." *Manhattan by Sail, Inc. v. Tagle*, 873 F.3d 177, 180 (2d Cir. 2017); *accord Meade*, 2017 WL 6509259, at *7.  Under the doctrine, a fact-finder may infer negligence merely from an event that caused the harm "if: (1) the event is of a type that ordinarily would not occur in the absence of negligence; (2) it is caused by an agency or instrumentality under the exclusive control of the party charged with negligence; and (3) it is not due to any voluntary action or contribution on the part of injured party." *Tagle*, 873 F.3d at 180 (citing *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 55 (2d Cir. 1978) (per curiam)); *accord Meade*, 2017 WL 6509259, at *7.

Here, Schindler does not dispute that it had "exclusive control" of the elevators at issue, Def.'s Mem. 18, and there are genuine disputes of fact as to the other two elements.  First, a reasonable jury could find that a passenger being struck by a closing elevator door with enough speed and force to cause substantial injury is an event "of a type that ordinarily would not occur in the absence of negligence." *Tagle*, 873 F.3d at 180.  Courts in this district have held that

"common sense establishes that an adequately maintained elevator should not have its doors closing on and striking its passengers severely enough to cause injuries to its passengers.'" *Linwood*, 2019 WL 5722110, at *9 (cleaned up) (quoting *Gonzalez v. Otis Elevator Co.*, No. 09-CV-8905 (GBD), 2012 WL 993476, at *3 (S.D.N.Y. Mar. 26, 2012)); *see also Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 160 (2d Cir. 2003) ("An injury suggests a malfunction which in turn suggests neglect." (internal quotation marks omitted)).  Schindler counters that there are other plausible causes for the elevator door striking Marcano.  *See* Def.'s Mem. 18-19 (arguing that "if an object or person does not go far enough into the elevator to obstruct the safety edge sensors and trigger the reopening device, the elevator door is not going to stop and reopen").  That may be so, but "the controlling law of this Circuit" does not require Marcano to "eliminate with certainty all other possible causes . . . or inferences," *Meade*, 2017 WL 6509259, at *8, and "[i]t thus comes as little surprise that most Second Circuit and New York State authority . . . addressing elevator door strike or similar cases have denied summary judgment on the application of *res ipsa loquitur*," *Linwood*, 2019 WL 5722110, at *9 (collecting cases); *accord Baisley v. Slade Indus., Inc.*, No. 22-CV-3791 (KMK), 2024 WL 3012568, at *12 (S.D.N.Y. June 13, 2024).  If Marcano's injury "was not the result of a malfunction attributable to negligence," Schindler "is free to offer evidence to that effect at trial."  *Stone*, 353 F.3d at 160.

Second, there is also a genuine dispute as to whether Marcano contributed to her accident and resulting injury.  Schindler argues, relying on three decades-old cases, that the *res ipsa loquitur* claim cannot survive summary judgment because Marcano "was struck by a closing door as she entered the elevator and had it within her power to cause the door to reopening [sic] by activating the door reopening device."  *See* Def.'s Mem. 19-20 (citing *Graham v. Wohl*, 724 N.Y.S.2d 416 (1st Dep't 2001), *Feblot v. N.Y. Times Co.*, 299 N.E.2d 672 (N.Y. 1973), and

*Weeden v. Armor El. Co.*, 468 N.Y.S.2d 898 (2d Dep't 1983)).  But Schindler does not actually offer evidence to establish that the circumstances here are analogous to those cases, *see, e.g.*, *Baisley*, 2024 WL 3012568, at *13 (distinguishing *Graham*, *Feblot*, and *Weeden*, and denying defendant's motion for summary judgment in an elevator strike case), and, in any event, the fact that Marcano's co-worker, Mallay, apparently entered the elevator immediately before Marcano cuts squarely against Schindler's theory, *see* Marcano Dep. 37-38.  At minimum, there is a triable issue of fact as to whether the alleged accident was "due to any voluntary action or contribution on the part of" Marcano.  *Tagle*, 873 F.3d at 180.

In short, there are genuine disputes of fact as to all three *res ipsa loquitur* elements. Accordingly, Schindler's motion for summary judgment must be and is denied as to that claim. *See Swanson*, 2024 WL 967331, at *5-7 (denying Schindler's motion for summary judgment on a *res ipsa loquitur* claim for similar reasons).

## CONCLUSION

For the foregoing reasons, Schindler's motion for summary judgment is GRANTED with respect to Marcano's traditional claim of negligence and DENIED with respect to her *res ipsa loquitur* claim.  Unless and until the Court orders otherwise, the parties shall submit a proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within thirty days of the date of this Opinion and Order**.  (The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.)  In the meantime, the Court is of the view that the parties should try to settle this case without the need for a trial.  To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and conducting a settlement conference before the

assigned Magistrate Judge (or before another third-party mediator). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

The Clerk of Court is directed to terminate ECF No. 38.

SO ORDERED.

Dated: November 19, 2024
New York, New York

JESSE M. FURMAN
United States District Judge